UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LEO A. NOLFI,

                       Plaintiff,

                                                        **DECISION AND ORDER**
                                                            10-CV-349-A

  v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                       Defendant.
_____


## INTRODUCTION

Pending before the Court are cross-motions for judgment on the pleadings (Dkt. Nos. 6, 8) that the parties have filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("FRCP"). Plaintiff Leo A. Nolfi ("Plaintiff") commenced the instant action pursuant to 42 U.S.C. § 405(g) on April 29, 2010, seeking review of a final determination of the Commissioner of Social Security ("the Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. Generally, Plaintiff maintains that the class action settlement set forth in Stieberger v. Sullivan entitles him to DIB dating back to March 31, 1985, when he was last insured. 792 F. Supp. 1376, modified, 801 F. Supp. 1079 (S.D.N.Y. 1992). The Commissioner counters that the rules set up by the Stieberger settlement do not make his application

retroactive to when he was last insured.

As a procedural note, the Court referred this case to Magistrate Judge H. Kenneth Schroeder, Jr.  Magistrate Judge Schroeder held oral argument on the pending cross-motions on December 20, 2010.  After reviewing the motion papers and the transcript of the oral argument, this Court has decided that it can resolve the pending motions without the need for a report and recommendation under FRCP 72.  For the reasons below, the Court grants the Commissioner's motion and denies Plaintiff's motion.

This case concerns Plaintiff's ongoing request for DIB for alleged ailments dating back as far as 1983.  This case has a long and complex history.  For the sake of brevity, the Court will highlight those aspects of that history pertaining to its analysis.

## BACKGROUND

Plaintiff filed his original applications for DIB and Supplemental Security Income ("SSI") on October 5, 1988 and August 23, 1988; in his DIB application, Plaintiff alleged a disability onset date of August 15, 1983.  In a decision dated December 16, 1988, Administrative Law Judge ("ALJ") John C. Mowrer denied both applications.  On June 22, 1989, the Appeals Council denied review of the 1988 DIB and SSI applications.

Meanwhile, on August 19, 1985, the Southern District of New York certified

a class of New York State residents challenging the Commissioner's acquiescence policies in following Second Circuit decisions to determine whether an individual was disabled. The class action also challenged the Commissioner's policies when reviewing the decisions of ALJs. The Social Security Administration ("SSA") reached a settlement with the class in 1992, and a district court judgment was entered approving the settlement agreement in Stieberger. 801 F. Supp. 1079. As explained below, the settlement created a procedure for reopening select cases that were improperly closed.

After the Stieberger settlement, SSA determined that Plaintiff is a member of the Stieberger class. On November 5, 1994, Plaintiff requested that SSA review his prior denial of benefits for his 1988 SSI and DIB applications. (Tr. 95).[1] SSA later determined that only Plaintiff's 1988 SSI and DIB applications were subject to reopening under Stieberger. While not at issue in this case, Plaintiff filed subsequent applications for SSI and DIB on December 6, 1995. Plaintiff declined to have his Stieberger claims consolidated with his 1995 applications. In a partially favorable decision dated May 27, 1998, ALJ Eric L. Glazer found Plaintiff disabled as of December 5, 1995 but not before then; therefore, Plaintiff was found eligible for SSI as of December 5, 1995. ALJ Glazer determined that res judicata applied to Plaintiff's DIB application, and therefore Plaintiff's 1995

---

[1] "Tr." refers to the numbered pages of the administrative record filed with the Court as part of the Commissioner's answer.


DIB claim was dismissed. The 1998 decision also found that Plaintiff's date last insured ("DLI") for purposes of DIB was March, 31, 1985.[2]

On August 30, 2000, Plaintiff completed questions on a Stieberger Supplement, which is used by the Commissioner in reopening Stieberger claims. (Tr. 146-48). In the Stieberger Supplement, Plaintiff indicated there were no changes in his condition since August 15, 1983, his alleged onset date for his 1988 DIB application. On September 21, 2000, SSA wrote Plaintiff indicating his 1988 SSI and DIB applications were reopened pursuant to Stieberger, and after having reviewed an administrative time period ("Development Period")[3] of April 1991 to November 1995, SSA found the denial of the 1988 SSI and DIB applications was proper. (Tr. 153-63). In November 2000, Plaintiff requested a hearing for reconsideration.

After a September 12, 2002 hearing that he held, ALJ Bruce R. Mazzarella considered a Development Period of April 1991 to November 1995. In a December 13, 2002 decision, ALJ Mazzarella found Plaintiff disabled for SSI purposes since October 12, 1994, the date of Plaintiff's fiftieth birthday based on Plaintiff's exertional capacity for sedentary work, Plaintiff's age, education, and

---

[2] Under 20 C.F.R. § 404.131, a claimant must have insured status to be eligible for DIB. Insured status is calculated as set forth in 20 C.F.R. §§ 404.101, .110 - .130. Plaintiff's DLI is not in dispute here.

[3] See Stieberger II.A of the Discussion section below for a more detailed explanation of the Development Period.

work experience as directed by Medical-Vocational Rules 201.19 and 201.10. ALJ Mazzarella found Plaintiff disabled through at least December 5, 1995, the disability onset date established by ALJ Glazer for Plaintiff's 1995 applications. While Plaintiff met the requirements for SSI as of that date, ALJ Mazzarella found Plaintiff was not entitled to DIB because Plaintiff's DLI expired prior to October 12, 1994.

Plaintiff appealed the 2002 decision, and the Appeals Council found that further development was needed to evaluate Plaintiff's allegations of disability.  In August 2005, the Appeals Council noted an error in the Development Period. Plaintiff filled out the Stieberger court review case form on November 5, 1994. Pursuant to the Stieberger settlement, the Appeals Council found that Plaintiff's Development Period began forty-eight months prior to the request for review. Accordingly, the Appeals Council found that Plaintiff's Development Period commenced on November 1, 1990.  The Development Period ended on December 5, 1995, the date on which Plaintiff was found disabled in a subsequent application and determined by ALJ Glazer in 1998.  The Appeals Council remanded Plaintiff's case to ALJ Mazzarella to review the appropriate Development Period.

ALJ Mazzarella then held a supplemental hearing on June 14, 2007 to determine whether Plaintiff was under a disability from November 1, 1990 through December 1, 1995.  During the hearing, Plaintiff moved to reinstate ALJ

Mazzarella's previously vacated 2002 finding that Plaintiff was disabled as of Plaintiff's fiftieth birthday, October 12, 1994, but not before then.  Plaintiff through his attorney waived any claim to establish disability prior to October 12, 1994. Specifically, Plaintiff's attorney stated, "[a]nd I've explained to Mr. Nolfi that by doing this he's waiving any claim to establish disability prior to that date, and he's in a concurrence with this motion to reinstate your decision, finding him disabled as of [October 12, 1994]."  (Tr. 682-83).

Next, in an August 1, 2007 decision, ALJ Mazzarella considered the amended Development Period of November 1, 1990 through December 5, 1995 and found that Plaintiff was disabled as of his fiftieth birthday, October 11, 1994,[4] but not before then.  Accordingly, ALJ Mazzarella found Plaintiff entitled to SSI as of October 11, 1994, but found that Plaintiff was not entitled to DIB because his DLI was March 31, 1985, indicating Plaintiff's insurance had already expired prior to Plaintiff becoming disabled.

Plaintiff appealed, and on March 24, 2010, the Appeals Council affirmed ALJ Mazzarella's 2007 decision, finding no basis for changing the decision. Specifically, the Appeals Council noted that because an actual onset date was

---

[4] In his 2007 decision, ALJ Mazzarella indicated the Appeals Council noted under 20 C.F.R. § 404.102, "an individual is deemed to reach a particular age on the day before his birthday."  Accordingly, in finding Plaintiff disabled upon attaining age fifty, the appropriate onset date was found to be October 11, 1994.

6

established in the case, a presumption of insured status did not apply.[5] Accordingly, the Appeals Council indicated the ALJ appropriately found Plaintiff not entitled to DIB because his DLI came before his actual onset date. This action followed.

## DISCUSSION

I.   **Standard of Review.**

This Court has jurisdiction to hear claims based on denial of Social Security benefits and may set aside the Commissioner's decision only if it is based upon legal error or his factual findings are not supported by substantial evidence. See 42 U.S.C. § 405(g). "Substantial evidence" in the context of a Social Security case is "more than a mere scintilla" and evidence which a "reasonable mind might accept as adequate to support a conclusion." See Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

This case is somewhat unusual in that resolving it requires a purely legal analysis. Specifically, the Court must review whether the Commissioner properly applied Stieberger when assessing Plaintiff's claims.

---

[5]   See Stieberger II.B of the Discussion section below for a more detailed explanation of the insured status requirements.

## II.     Stieberger Generally.

The Stieberger settlement agreement was developed as a remedy for the effects of the SSA's "non-acquiescence policy," under which ALJs were essentially told to disregard the law of this Circuit on certain issues when adjudicating disability claims. The settlement agreement required the Commissioner to provide a New York statewide class with notice and opportunity to request the reopening of, and new decision on, disability claims that were denied or terminated at any administrative level between October 1, 1981 and October 17, 1985, and were decided at the administrative law judge or Appeals Council level between October 7, 1981 and July 2, 1992.

Shaw v. Chater, 221 F.3d 126, 136 (2d Cir. 2000).

### A.    The Stieberger Development Period.

When, such as here, a non-pending claim is reopened under Stieberger, Section 10(e)(4) indicates SSA must develop the administrative record pursuant to 20 C.F.R. §§ 404.1512 - .1518, 416.912 - .918 for the Development Period to determine disability status. See Stieberger, 801 F. Supp. at 1081, 1091. The Development Period usually begins four years preceding the date SSA receives a class member's request for reopening and continues to the present date unless the class member was found disabled during a subsequent application. See Stieberger, 801 F. Supp. at 1081, 1091; see also HALLEX I-5-4-13.VIII.B.1-3.[6]

Within SSA's management structure, the Field Office ("FO") is responsible

---

[6] The Hearings, Appeals and Litigation Law Manual ("HALLEX") I-5-4-13 provisions were created to guide implementation of the Stieberger settlement. A copy of the Stieberger HALLEX provisions can be found at: http://www.socialsecurity.gov/OP_Home/hallex/I-05/I-5-4-13.html.

for computing the Development Period prior to releasing the claim to a department called Disability Determination Services ("DDS").  If a class member is found not disabled for any or all of the Development Period and certain conditions are met, DDS may have to develop the administrative record back to the alleged disability onset date in the earliest Title II Stieberger claim.  See POMS DI § 12586.001(7).[7]

There are two instances when DDS develops the record for the entire retroactive period: (1) if the basic four-year period extends back to the alleged disability onset date in the earliest Title II claim; or (2) a section 10(e)(5) exception applies.  See POMS DI § 42586.055(D)(1).  Under the 10(e)(5) exception, DDS must develop the record back to the earliest retroactive date if DDS determines the class member was not disabled during all or part of the Development Period and one of the following conditions is corroborated: (i) a class member has a chronic impairment and alleges it was more severe in the past, and more information is needed about any earlier acute phase; or (ii) the class member's treating source during the Development Period differed from the individual's treating source prior to the Development Period, and other evidence may be available.  See Stieberger, 801 F. Supp. at 1081, 1091; HALLEX I-5-4-

---

[7] SSA's Program Operations Manual Systems ("POMS") are internal operating instructions used by field employees when processing Social Security disability claims.  A copy of the Stieberger POMS can be found at: http://policy.ssa.gov/poms.nsf/lnx/0412586000 and http://policy.ssa.gov/poms.nsf/lnx/0442586000.

13.VIII.B.4; POMS DI §§ 12586.035(D)(2), 42586.055(D)(2).

In considering the 10(e)(5) exception, DDS must determine whether the conditions in (i) or (ii) are corroborated by the combination of medical evidence, the class member's responses to the disability questions on the Stieberger Supplement, and information in SSA's records before developing the additional potential period of disability.  See HALLEX I-5-4-13.VIII.B.4; POMS DI §§ 12586.035(D)(2), DI 42586.055(D)(1)-(2).  If the 10(e)(5) exception is met, DDS will ask the FO to obtain the Stieberger claim file and verify the class member's DLI.  See HALLEX I-5-4-13.VIII.B.4, POMS DI § 12586.045(B).  However, if the 10(e)(5) conditions are not met, the record need not be developed for an earlier period.  See POMS DI § 42586.055(D)(1)-(2).

### B.     The Stieberger Payment Period and Insured Status.

Typically, to receive DIB, a claimant must have disability insured status in the first month the claimant is disabled.  See 20 C.F.R. § 404.101.  A claimant's insured status is determined based on whether a claimant acquired sufficient quarters of coverage based on the wages a claimant is paid.  Id.

> An applicant must be insured for disability insurance benefits to be eligible for [Social Security Disability] benefits.  42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. §§ 404.101(a), 404.110 to 404.130, 404.130 to 404.133; Arnone v. Bowen, 882 F.2d 34, 37 (2d Cir. 1989).  This translates into two requirements: the applicant must have 1) adequate social security earnings to be "fully insured," 20 C.F.R. § 404.110 through § 404.115; and 2)

10

"disability insured status" in the quarter he became disabled or in a later quarter in which he was disabled, C.F.R. § 404.131(a).

Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

The Stieberger settlement, however, contains unique provisions governing insured status and DIB entitlement. Once a claimant is found disabled, Stieberger limits the payments to a forty-eight month period from December 1987 through November 1991 ("Payment Period"), unless certain exceptions apply. See HALLEX I-5-4-13.VIII.D. When computing the Payment Period, the FO will assign an administrative onset date to allow payment during the first month of the Payment Period. See HALLEX I-5-4-13.VIII.A; POMS DI § 12586.045(A). Because the disability onset date is an administrative onset date, it will not necessarily be related to the Development Period. See POMS DI § 12586.045(A). For Title II cases, the administrative onset date is the first day of the fifth month before the first month of the Payment Period. See POMS DI § 42586.065(D).

Under Stieberger, a claimant is presumed insured as of the administrative onset date as long as the claimant is insured as of the alleged onset date in the Stieberger claim. See HALLEX I-5-4-13.VIII.E-F. However, in cases where an actual onset date is established, the presumption of insured status does not apply; for entitlement to DIB, the claimant's actual onset date must be prior to his DLI. Id.

11

The Court will evaluate Plaintiff's arguments in the context of the procedural structure summarized above.

### III. The Commissioner Properly Reopened Plaintiff's Claim and Examined the Appropriate Time Period.

Plaintiff contends that the Commissioner erred in failing to expand the Development Period beyond the five-year period established by SSA under Section 10(e)(4). According to Plaintiff, the Commissioner's decision to split Plaintiff's Development Period into a time when he was disabled and a time when he was not disabled means that, under Section 10(e)(5), the Development Period should go all the way back to his alleged onset date on his earliest Title II claim: August 1983. The Commissioner rejects this assertion and contends that the record contains no information requiring an expansion of the Development Period beyond what the Appeals Council already found under Section 10(e)(4).

Resolving this issue requires review of the interaction between Sections 10(e)(4) and 10(e)(5). Under Section 10(e)(4), a Development Period is expanded for four years from the time that a request for reopening is received. That is exactly what the Commissioner did here. Plaintiff requested reopening on November 4, 1994. The Commissioner, through the Appeals Council, established a review of a Development Period of November 1, 1990 through December 5, 1995. In 2007, ALJ Mazzarella examined that Development Period

and found that Plaintiff was disabled as of October 12, 1994, which also coincides with the date Plaintiff himself gave the ALJ at the hearing. (Tr. 682-83). As a result, not only did the ALJ use Section 10(e)(4) properly, but also, the parties do not dispute the computation of the Development Period up to the point at which the determination of disability was made.

Having reviewed the Commissioner's use of Section 10(e)(4), the Court now must review whether that use triggers the provisions of Section 10(e)(5). Under Section 10(e)(5), when a class member is found disabled for part of the Development Period, the Commissioner is obligated to develop the record all the way back to the "effective application date" if either of two conditions are met.[8] First, a class member must have a chronic condition that he alleged was more severe in the past, meaning more severe at some point prior to the Development Period that was already reviewed. See Stieberger, 801 F. Supp. at 1091; see also HALLEX I-5-4-13.VIII.B.4; POMS DI §§ 42586.055(D)(2), 12586.035(D)(2). In the alternative, a class member must establish that he has new treating sources or new information from old treating sources suggesting severe impairments going back beyond the established Development Period. If either of

---

[8] Under POMS DI §§ 12586.035(D)(1), 42586.001(9), the effective application date refers to the alleged onset disability of the earliest Title II Stieberger claim. As previously mentioned, Plaintiff's 1988 DIB application alleged a disability onset of August 15, 1983. (Tr. 431). Although Plaintiff does not specify the retroactive date, it appears that Plaintiff's reference to developing the record for the entire retroactive period dates back to August 1983.

these conditions exist, then, under the HALLEX and POMS, the effective application date becomes the alleged onset date.

Here, Plaintiff was found disabled as of October 11, 1994. That actual onset date fell inside of his Development Period of November 1, 1990 through December 5, 1995. That determination by the Commissioner created exactly the split disability time that triggers a review under Section 10(e)(5). So long, then, as Plaintiff can establish one of the conditions in (i) or (ii) then he would be able to prompt a review going back to August 1983, which is the onset date that he set forth in his Stieberger Supplement. This is where Plaintiff falls short. The record contains no indication that Plaintiff ever alleged chronic impairments more severe in the 1980s. In fact, Plaintiff had the opportunity to state that he had more severe impairments in multiple places in the record–such as the Stieberger Supplement, used to reopen the claim and compute the Development Period, and the administrative hearing held before an ALJ to determine disability during the Development Period. Not only did Plaintiff not fill in that information, but when Plaintiff moved to reinstate ALJ Mazzarella's prior determination finding Plaintiff disabled as of October 12, 1994, Plaintiff's attorney explicitly stated, "[a]nd I've explained to Mr. Nolfi that by doing this he's waiving any right to establish disability prior to that date, and he's in a concurrence with this motion to reinstate your decision finding him disabled as of [October 12, 1994]." (Tr. 682-83).

Additionally, there is no indication in the record that Plaintiff has new

treating sources or new information beyond those sources already in the record. As a result, Plaintiff does not meet the criteria under either (i) or (ii). Since Plaintiff cannot meet either of those conditions, he cannot make use of Section 10(e)(5) to expand the Development Period beyond November 1, 1990. For this reason, the Commissioner properly computed the Development Period and properly decided that no further medical information was necessary.

### IV. The Commissioner Properly Denied Benefits Based on Plaintiff's Date Last Insured.

Finally, Plaintiff argues that Section 10(e)(7) of the Stieberger settlement agreement creates an entitlement to benefits in spite of his otherwise being ineligible. Section 10(e)(7) has four subparts governing calculations of benefits. As the first sentence of Section 10(e)(7) indicates, "[w]hen a person is found entitled to disability benefits on a non-pending claim or claims reopened under this paragraph, all payments on such claims are subject to the regular payment, non-payment and reduced payment provisions of the Social Security Act and payments will be made as follows." Stieberger, 801 F. Supp. at 1081, 1091. Therefore, prior to applying the subparts, a class member must be found entitled to disability benefits.

Despite a finding that Plaintiff was not entitled to DIB, Plaintiff poses two arguments under Section 10(e)(7). First, Plaintiff argues entitlement under

Section 10(e)(7)(i) and cites a portion of Section 10(e)(7)(i), stating "[p]ersons found disabled during the period specified in subparagraph 4 will be paid..." <u>Stieberger</u>, 801 F. Supp. at 1091.  However, as previously mentioned, Section 10(e)(7)(i), a subpart of Section 10(e)(7), only applies when a class member is found entitled to disability benefits.  Moreover, Section 10(e)(7)(i) requires a person to be found disabled to receive payments.  Here, Plaintiff was found to be disabled only after his DLI.  The Commissioner properly determined Plaintiff was not entitled to DIB.  Therefore, Plaintiff is not entitled to payment under Section 10(e)(7)(i).

Next, Plaintiff argues that Section 10(e)(7)(iv) supports entitlement to DIB. Section 10(e)(7)(iv) states, "[a] person claiming Title II benefits shall be considered insured, unless a determination is made after appropriate development that the claimant was not disabled as of the date last insured." <u>Stieberger</u>, 801 F. Supp. at 1092.  As previously mentioned, Plaintiff's DLI was March 31, 1985.  Plaintiff argues that he should be entitled to DIB because under Section 10(e)(7)(iv), there was no determination he was not disabled as of March 31, 1985, or in the alternative, a determination should be made as to whether he was disabled as of his DLI.  However, Plaintiff's reliance on Section 10(e)(7)(iv) is misplaced as it is used out of context.  As with Section 10(e)(7)(i), Section 10(e)(7)(iv) is also a subpart of 10(e)(7).  Accordingly, to invoke the rules set forth under Section 10(e)(7)(iv), Plaintiff must have been found entitled to disability

16

benefits, which he was not.  Because Plaintiff was not found entitled to DIB, Section 10(e)(7)(iv) is inapplicable.  The Commissioner was not required to make a disability determination as of Plaintiff's DLI.

## CONCLUSION

For the reasons stated, the Court grants the Commissioner's motion for judgment on the pleadings (Dkt. No. 6) and denies Plaintiff's cross-motion (Dkt. No. 8).  The Clerk of the Court shall close this case.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: August 9, 2011